LAW OFFICES OF NICOLAI COCIS
Nicolai Cocis (204703)
nic@cocislaw.com
25026 Las Brisas Rd.
Murrieta, CA 92562
Phone: 951-695-1400

LIBERTY COUNSEL
Matthew D. Staver*
mstaver@lc.org
Horatio G. Mihet*
hmihet@lc.org
Daniel J. Schmid*
dschmid@lc.org
Mariah Gondeiro (323683)
mgondeiro@lc.org
P.O. Box 540774
Orlando, FL 32854
Phone: 407-875-1776
Fax: 407-876-0770

*Application for Pro Hac Vice Admission Forthcoming

*Attorneys for Plaintiff Eric Batman*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC BATMAN, )<br><br>    Plaintiff, )<br><br>v. )<br><br>LOS ANGELES COUNTY; LOS )<br>ANGELES COUNTY )<br>DEPARTMENT OF PUBLIC )<br>WORKS, MARK PESTRELLA )<br>in his Official Capacity as )<br>Director of Los Angeles )<br>Department of Public Works, )<br><br>    Defendants. ) | Case No. <u>2:26-cv-2525</u><br><br>**Proposed Order Granting Preliminary Injunction** |

**THIS MATTER,** is before the Court on Plaintiff's Motion for Preliminary Injunction. The Court has carefully considered the record in this matter, including the sworn allegations of the Verified Complaint, the Motion, and the other pleadings before the Court. The Court hereby finds that the Motion should be and hereby is GRANTED, and makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I. Batman's employment and sincerely held religious beliefs.

Batman has been employed by the Department since 2002, holding various positions and obtaining routine and regular promotions the entire 24 years he has been employed there. (Verified Complaint, "V. Compl., ¶30.) He began as a civil engineering assistant, was promoted to associate civil engineer in 2004, and then civil engineer in 2009. (*Id*.) In 2015, the Department promoted Batman to senior civil engineer, which requires that he oversee the operations of Los Angeles County's flood control and stormwater capture facilities, including fourteen dams, twenty-seven spreading grounds, and three-hundred sea water barrier injection wells. (*Id.*, ¶31.) Batman's daily tasks include monitoring flood control and storm water capture facilities, including stream flows, injection rates, groundwater levels, and how they all interact with one another. (*Id.*, ¶32.) Batman has received excellent performance reviews throughout his 24-year career at the Department and has never encountered a single issue. (*Id.*, ¶33.)

Since 2003, Batman has worked at the Department's headquarters located in Alhambra, California, which is comprised of field staff, administrative employees, and engineers. (*Id.*, ¶34.) Batman completes most of his job functions on the computer and over

telecommunication. (*Id.*, ¶38.) Batman occasionally works on site at the dams and spreading grounds during rain season from October through April. (*Id.*, ¶39.)

Batman has been a devout Christian his entire life and attends United Pentecostal Church in Bellflower, California with his wife. (*Id.*, ¶40.) Batman has sincerely held religious beliefs that the Book of Genesis perfectly describes God's creation of human beings. (*Id.*, ¶41.) This includes God's determination that humans are either male or female before their birth: "So God created mankind in his own image, in the image of God he created them; male and female he created them." *Genesis* 1:27 (NIV). (*Id.*) Batman has sincere religious beliefs that *Psalm* 139 confirms that we were all born as God intended: "You made all the delicate, inner parts of my body, and knit me together in my mother's womb." *Psalm* 139:13 (NLTCE). (*Id.*, ¶42.) Batman has sincere religious beliefs that departing from God's natural design is sin. (*Id.*, ¶43.) The Book of Deuteronomy strictly prohibits dressing as the opposite sex: "A woman must not put on men's clothing, and a man must not wear woman's clothing. Anyone who does this is detestable in the sight of the LORD your GOD." *Deuteronomy* 22:5 (NLTCE). (*Id.*). Thus, Batman has sincere religious beliefs, grounded in Scripture, that if an individual's dresses as the opposite sex, they depart from God's natural design and commit sin. (*Id.*)

In the Second Epistle of Timothy, Apostle Paul reminds Timothy, that "[a]ll scripture is breathed out by God and profitable for teaching, for reproof, for correction, and for training in righteousness, that the man of GOD may be complete, equipped for every good work." *2*

*Timothy* 3:16-17 (ESV). (*Id.*, ¶44.) Batman has sincerely held religious beliefs, based on this Scripture, that the Holy Bible is the inspired, infallible, and inerrant word of the Lord Jesus Christ and that he is to follow its teachings. (*Id.*)

Batman has sincerely held religious beliefs, derived from the teachings in the Holy Bible, that homosexuality is a sin and that he should not celebrate it. (*Id.,* ¶45 (citing *Romans* 1:26-27)). Batman has sincerely held religious beliefs, based on *1 Corinthians* 6:9-10 and *1 Timothy* 1:9-10, that homosexuality is among the sins that will exclude people from the salvation, eternal life, and the Kingdom of God. (*Id.*, ¶46.) Batman also has sincerely held religious beliefs that pride is a sin, and that pride leads the way to evil. (*Id.*, ¶47 (citing *Proverbs* 11:2, 29:23.)) As a Christian, Batman has sincerely held religious beliefs, based on *Luke* 6:31, that he is to treat all individuals how he would want to be treated, and that this teaching requires him to treat all individuals with respect, kindness, and compassion. (*Id.*, ¶48.) Batman follows this command of Scripture and affords compassion, love, and kindness to all his fellow employees at the Department. (*Id.*, ¶49.) Batman's sincerely held religious beliefs compel him to abstain from celebrating what Scripture condemns, including the celebration of so-called Pride Month.  (*Id.*, ¶50.) Batman has sincerely held religious beliefs that inform him of the imperative nature declining to support unrepentant sin because *Isaiah* 5:20 states that "those who call evil good and good evil" shall be condemned and judged. (*Id.*, ¶51.)

Consistent with his sincerely held religious beliefs that pride is a sin, Batman likewise believes that celebrating sin is prohibited by

Scripture. (*Id.*, ¶52.) Batman has sincerely held religious beliefs that celebrating immorality leads to God's judgment, as outlined in *Proverbs* 8:13, *1 John* 2:16, *Ezekial* 16:49, and *Isaiah* 28:1. (*Id.*, ¶53.) Batman also has sincerely held religious beliefs that the rainbow was a sign from God that He would never destroy the earth by flood again, and that it is a sacred symbol. (*Id.*, ¶54 (citing *Genesis* 9:13-15.)) Batman has sincerely held religious beliefs that the rainbow serves as a reminder of God's faithfulness, mercy, and the transition from judgment to restoration. (*Id.*, ¶55.) Batman also has sincerely held religious beliefs that the rainbow is a unique possession of God, and his religious beliefs are based on *Revelation* 4:3, which states Christ had "[a] rainbow that shone like an emerald encircled the throne." (*Id.*, ¶56.) Batman has sincerely held religious beliefs that compel him to refrain from celebrating or recognizing a symbol he believes to be ordained by God in Scripture, something that recognizes what his religious compel him is sin. (*Id.*, ¶57.)

Batman's sincerely held religious beliefs place him in direct conflict with an employment requirement that he celebrate, recognize, and solemnize conduct and actions that he views as sin. (*Id.*, ¶58.)

## II.  Batman's request for religious accommodation, and Defendants' discriminatory denial.

Because of his sincerely held religious beliefs, discussed *supra*, Batman came into conflict with an employment requirement that he be present in the office for the County's explicit and overt celebration of so-called Pride Month. (*See generally* V. Compl. ¶¶59–66, ¶67.) Batman's sincerely held religious beliefs compelled him to seek a religious accommodation allowing him to work remotely during the

month of June so as to not tacitly or overtly endorse what his sincerely held religious beliefs compel him to view as sin. (*Id.*, ¶68.)

In June 2023, the Department initially allowed Batman to work remotely without requesting an accommodation because his office was under construction from the middle of May until Mid-July 2023. (*Id.*, ¶70.) Thus, Batman had no need of a formal request for accommodation during the first year of Defendants' new policies and practices. (*Id.*) Batman was able to fully perform his job duties, complete all required tasks, and otherwise satisfy his employment requirements remotely during June 2023 without incident. (*Id.*, ¶71.) In 2023, even including the month in which he worked remotely, Batman received one of his best performance reviews. (*Id.*, ¶72.)

In May 2024, Batman requested a religious accommodation allowing him to work remotely during the month of June, to allow him to continue performing his job duties and required tasks without sacrificing his sincerely held religious convictions. (*Id.*, ¶73.) On May 28, 2024, Batman approached his immediate supervisor at the Department to request the religious accommodation of working remotely during June 2024. (*Id.*, ¶74.) In that conversation, Batman informed his supervisor of his sincerely held religious beliefs, informed his supervisor of the reason his religious beliefs conflicted with an employment requirement during the month of June, and requested that he be provided a reasonable accommodation for those religious beliefs. (*Id.*, ¶75.) Batman's supervisor instructed him to make his request in writing via email. (*Id.*, ¶76.)

On May 30, 2024, Batman sent his supervisor an email memorializing his request for a religious accommodation. (*Id.*, ¶77 and Exhibit F.) In his request for a religious accommodation, Batman informed his supervisor of his sincerely held religious beliefs, informed his supervisor of the reason his religious beliefs conflicted with an employment requirement during the month of June, and requested that he be provided a reasonable accommodation for those religious beliefs. (*Id.*, ¶78.) Batman also noted that his requested accommodation was already occurring for some days of the week and that he was able to perform his functions remotely. (*Id.*, ¶79.)

On June 3, 2024, the Department denied Batman's request for a religious accommodation. (*Id.*, ¶80.) The reason the Department denied his request for a religious accommodation was because, as the Department informed him, it could not grant his requested accommodation and comport with its commitment "to fostering an inclusive and welcoming environment for all." (*Id.*, ¶81.) Rather than provide Batman a reasonable accommodation that was plainly available and not burdensome to anyone, Batman was instructed that he could simply use the back entrance. (*Id.*, ¶82.) The Department also suggested to Batman that he seek mental health counseling for any distress he may feel as a result of the conflict between his sincerely held religious beliefs and the Department's denial of his requested accommodation. (*Id.*, ¶83.) In other words, the Department suggested to Batman that his religious beliefs required mental health counseling rather than accommodation. (*Id.*)

On June 4, 2024, the Department informed Batman that he could challenge the denial of his requested religious accommodation by filing a grievance form with the Department of Employee Relations. (*Id.*, ¶85.) That same day, Batman filed a grievance form with the Department of Employee Relations, reiterating his simple request for a reasonable and plainly available religious accommodation. (*Id.*, ¶86.) In his grievance, Batman stated:

> My request to be accommodated by allowing me to telework additional days during the month of June due to the County's decision to prominently fly the pride flag near the main entrance of Public Works headquarters building, which conveys a message and ideology that is in direct opposition to my deeply held religious beliefs and is therefore highlight offense, was wrongfully denied. Currently, I telework one day a week (typically on Monday's) and report to Public Work's headquarters building the remaining three days a week. While the pride flag is flown in June, each morning I am subjected to its message and ideology immediately when I first enter the building, each time I exit and then re-enter the building at lunch, and finally when I exit the building to go home each evening. Being exposed to this symbol displayed in such a highly visible location at Public Works headquarters building multiple times throughout each working day negatively impacts my ability [to] perform my work and results in a hostile work environment.

(*Id.*, ¶86 and Exhibit G.)

As Batman's continued quest for a religious accommodation revealed, his typical work week is 4 days per week, and he already works 1 of those days remotely. (*Id.*, ¶88.) His request therefore was to have a total of 12 additional days (for the entire year) to work remotely in order to continue to perform his employment duties while maintaining his sincerely held religious convictions. (*Id.*) This accommodation was readily available, non-burdensome to anyone, and required under Title VII and the First Amendment. (*Id.*) On June 5, 2024, Batman received a decision denying his requested accommodation. (*Id.*, ¶89.) The decision stated the following:

> After consideration of the information that you presented during your grievance, I have determined that the facts presented did not show that your accommodation request was reasonable. The County and Department are committed to fostering an inclusive workplace, including for our LGBTQ+ employees, and you were provided the opportunity to use an alternative entrance if you find the flag objectionable. Your previous telework schedule in June 2023 was due to the building being under construction.
>
> Therefore, your grievance is denied.

(*Id.*, ¶90.)

As his supervisors had done before, the denial of his grievance request also noted that Batman could seek professional help for his religious beliefs if he found the violation of his conscience to be distressing. (*Id.*, ¶91.) In other words, the Department suggested to Batman that his religious beliefs required mental health counseling

rather than accommodation. (*Id.*) Because of the denial of his requested religious accommodation, Batman was forced to work in an environment that required him to violate his sincerely held religious beliefs in 2024 when a reasonable, non-burdensome, and readily available accommodation was denied. (*Id.*, ¶92.)

In 2025, Batman again requested a religious accommodation for remote work during the month of June 2025. (*Id.*, ¶93.) In his June 2025 request for accommodation, Batman described in detail the basis for his religious convictions and why they conflicted with an employment requirement. (*Id.*, ¶94.) In his religious accommodation request, Batman also made clear that the Department had made similar religious accommodations available to other employees at the Department on a regular basis. (*Id.*, ¶95.) Specifically, the Department had permitted employees with the same or similar work requirements as Batman to work remotely during the entire month of Ramadan in order to comport their employment requirements with their sincerely held religious beliefs. (*Id.*, ¶96.) As the Department's treatment of religious adherents during the month of Ramadan made clear, religious accommodations for remote work were readily available, offered to other religious employees, and did not unduly burden the Department at all. (*Id.*, ¶97.) (*See also id.*, ¶111 and Exhibit K.)

Despite the disparate treatment of the remote work accommodations made available to religious adherents celebrating Ramadan, the Department refused to extend the same accommodation to Batman. (*Id.*, ¶98.) In addition to his written email to his supervisor, Batman also submitted a Religious Accommodation Request Form on

June 2, 2025. (*Id.*, ¶99.) On the form, Batman explained why the requirement that he be physically present at headquarters during the month of June violates his sincere religious convictions:

> The flag has six colored stripes which stand for various expressions of sexuality that are sinful according to my religion. Being forced to participate in the County's celebration of sinful sexuality by working under this flag and being forced to look at it in order to come to work violates my religious beliefs.

(*Id.*, ¶100.)

Batman also stated that

> This celebration of "Pride" is sinful according to my faith and God's commands. God's word requires me to not participate in celebrations of activity that God's Word describes as sinful. God's Word, the Bible contains the commands of God to his followers. The Bible recognizes the rainbow as a unique possession of God. The Bible describes "pride" as a great sin. The Bible command God's followers to forsake pride and to avoid sinful celebrations. The Bible commands the followers of God to be separated from sinful practices.

(*Id.*, ¶101.)

Batman made clear throughout the form that he had sincere religious convictions warranting an accommodation, that the beliefs were sincerely held and grounded in the Bible, and that there was an accommodation available to him. (*Id.*, ¶102.) In his religious accommodation request, Batman also made clear that the Department

had made similar religious accommodations available to other employees at the Department on a regular basis. (*Id.*, ¶103.) Specifically, the Department had permitted employees with the same or similar work requirements as Batman to work remotely during the entire month of Ramadan in order to comport their employment requirements with their sincerely held religious beliefs. (*Id.*, ¶104.) As the Department's treatment of religious adherents during the month of Ramadan made clear, religious accommodations for remote work were readily available, offered to other religious employees, and did not unduly burden the Department at all. (*Id.*, ¶105.) Despite the disparate treatment of the remote work accommodations made available to religious adherents celebrating Ramadan, the Department refused to extend the same accommodation to Batman. (*Id.*, ¶106.)

Batman met briefly with Department officials and his supervisor to discuss his accommodation request. (*Id.*, ¶107.) Two days after his meeting, the Department again denied Batman's requested accommodation. (*Id.*, ¶108.) Instead of providing Batman with the remote work accommodation, an accommodation made available to similarly situated employees who require religious accommodation for the month of Ramadan, Defendants informed Batman again that he could simply use the back door. (*Id.*, ¶109.) In other words, Defendants' proffered "accommodation" of Batman's request for a religious accommodation was to relegate him to "separate but equal" facilities. (*Id.*, ¶110.) Defendants' treatment of Batman's religious accommodation request is discriminatory and unequal, as the trade and union publications for the Department's workers even recognized

that the Department allowed remote work for the entire month of Ramadan for employees whose religious beliefs required it. (*Id.*, ¶111.)

Batman intends to seek a religious accommodation again this year to abstain from having to support, celebrate, and recognize what his religious beliefs consider sin in 2026. (*Id.*, ¶112.) As has been true for each of his prior requests for a religious accommodation, Batman is concerned his request will once again be denied and the treatment of his religious beliefs discriminatorily ignored. (*Id.*, ¶113.)

## CONCLUSIONS OF LAW

To obtain a preliminary injunction, Batman must show that (1) he is likely to succeed on the merits of his claims against Defendants, (2)he is suffering irreparable harm in the absence of a preliminary injunction, (3) the balance of the equities tips in his favor, and (4) the injunction is in the public's interest. *Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury," because a showing of a likelihood of success "usually demonstrates he is suffering irreparable harm no matter how brief the violation" and that showing necessarily "tips the public interest decidedly in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The reason for this is simple: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citations omitted). Batman easily satisfies all four factors, and thus this Court grants a preliminary injunction

**I. Batman is likely to succeed on the merits of his constitutional and statutory claims.**

**A. Defendants' denial of Batman's request for religious accommodation violates the First Amendment Free Exercise Clause.**

"The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1990). "In addressing the constitution protection for the free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling government interest." But, "[a] law failing to satisfy these requirements must be justified by a compelling interest and must be narrowly tailored to advance that interest." *Id.* at 532.

**1. Defendants' denial of Batman's requested religious accommodation is neither neutral nor generally applicable.**

"Government regulations are not neutral or generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). Indeed, "[g]overnment fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533

(2021). Here, there is no question that Defendants have treated Batman's request for a religious accommodation less favorably than other identical request by adherents of different religious faiths. (*Compare* V. Compl., ¶¶108–09 (denying Batman's request for religious accommodation), *with id.* ¶¶95, 96, 97, 111 (granting the identical religious accommodation request to adherents of other religious faiths).) It is no answer to say that Defendants' actions are not religiously hostile because they permit *some* accommodations of religion. "Rather, once [the government] creates a favored class of [accommodations], [it] must justify why [Batman] is excluded from that favored class." *Roman Catholica Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 29 (2020) (Kavanaugh, J., concurring). Here, the accommodation requested by Batman was identical to the accommodation requested by other religious adherents. Their requests were granted; Batman's was denied. Defendants' actions "cannot be viewed as neutral because they single out [Batman] for especially harsh treatment," *Catholic Diocese*, 592 U.S. at 17, while granting special accommodation treatment to the County's more favored religious adherents. (V. Compl., ¶¶95, 96, 97, 111.) Defendants' actions are neither neutral nor generally applicable.

"The First Amendment demands governmental neutrality between religion and religion, and between religion and nonreligion." *Epperson v. Arkansas*, 393 U.S. 97, 103 (1968). Defendants violated both by granting (and therefore expressly favoring) the religious accommodation requests of other religious employees who needed an identical accommodation to the one Batman sought. The Free Exercise

Clause prohibits the government from singling out Batman's religious beliefs for disfavored treatment when other similarly situated beliefs are treated more favorably. Defendants were "obliged under the Free Exercise Clause to proceed in a manner neutral toward and tolerant of [Batman's] religious beliefs." *Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 638 (2018). Indeed, "[t]he Constitution commits itself to religious tolerance." *Id.* at 639. Defendants provided Batman neither.

### 2. Defendants' denial of Batman's requested religious accommodation is subject to and violates strict scrutiny.

Because Defendants' treatment of Batman's request for a religious accommodation is neither neutral nor generally applicable, it must satisfy strict scrutiny. *Tandon*, 592 U.S. at 62; *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1233 (9th Cir. 2020) ("disparate treatment of religion triggers strict scrutiny"). This is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997). Indeed, "[t]hat standard is not watered down; it really means what it says," *Tandon v. Newsom*, 141 S. Ct. 1294, 1298 (2021), which is rarely passed. *See Burson v. Freeman*, 504 U.S. 191, 200 (1992) ("[W]e readily acknowledge that a law rarely survives such scrutiny . . . ."). This is not that rare case

### a. Defendants bear the burden to satisfy strict scrutiny.

"As the Government bears the burden of proof on the ultimate question of [their action's] constitutionality, [Batman] must be deemed likely to prevail unless the Government" satisfies strict scrutiny. *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Indeed, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales*

*v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). The First Amendment "squarely" places the burden on the government to demonstrate the compelling interest achieved through the least restrictive means. *Id.* at 429. Defendants fail that test

### b. Defendants' denial of Batman's requested religious accommodation is not supported by a compelling interest.

Defendants have no interest whatsoever, much less a compelling one, for prohibiting Batman from receiving a religious accommodation that would impose hardship on no one, and where it has permitted the exact same accommodation for adherents of other sincerely held religious beliefs. Where, as here, First Amendment rights are at issue, "the government must shoulder a correspondingly heavier burden and is entitled to considerably less deference in its assessment that a predicted harm justifies a particular impingement on First Amendment rights." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 585 U.S. 878, 907 (2018). Here, because Defendants' denial of Batman's request for a religious accommodation implicates his First Amendment rights, Defendants "must do more than simply posit the existence of the disease sought to be cured. [They] must demonstrate that the recited harms are real, not merely conjectural." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994); *see also Edenfield v. Fane*, 507 U.S. 761, 770 (1993). This is so because "[d]eference to [the government] cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Commc'ns, Inc. v. Maine*, 435 U.S. 829, 843 (1978). The government has no interest whatsoever, much less a compelling one, in excluding all religion from the public square. Indeed,

Proposed Order Granting Motion – Preliminary Injunction –
*Batman v. County of Los Angeles, et al.* –

17

the compelling interest is in protecting constitutional rights to religious speech, expression, and exercise, *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014), not in excluding religion from the public sphere. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

Here, Defendants' only proffered justification for denying Batman's request for a religious accommodation was that the County and the Department were "committed to fostering an inclusive workplace." (V. Compl., ¶90.) No explanation was given as to how allowing Batman to receive a religious accommodation respecting his First Amendment rights would undermine that interest at all, or why granting his request for a religious accommodation would not have furthered that interest by including his religious beliefs and showing tolerance for them. Notably, what Batman requested here was simply to work a total of 12 days (out of the entire year) remotely. (V. Compl., ¶88.) He already works 25% of this time remotely without incident and without any burden on his employer or colleagues. (*Id.*) Defendants have no interest, much less a compelling one, in denying that request, particularly when granting the same accommodation to others.

In fact, Defendants' proffered justification is insufficient as a matter of law. Defendants' claimed reason of "fostering an inclusive workplace," (V. Compl., ¶90), is too "high a level of generality." *Fulton*, 593 U.S. at 541. "[T]he First Amendment demands a more precise analysis." *Id.* Indeed, "[r]ather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Id.* Simply put, "[t]he question, then, is not whether the [County] has a compelling interest in

enforcing its non-discrimination policies generally, but whether it has such an interest in denying an exception to [Batman]." *Id. It does not*.

As Defendants have already demonstrated, remote accommodations for religious adherents needing such religious accommodation for their sincere religious beliefs is available and non-burdensome. That is why they have granted them to other religious adherents. (V. Compl., ¶¶95, 96, 97, 111.) Yet Batman's identical request for an identical accommodation was denied on the basis of some broadly formulated interest in nondiscrimination and inclusion. *That does not suffice*. Indeed, "this interest cannot justify [Defendants'] denying [Batman] an exception for [his] religious exercise." *Fulton*, 593 U.S. at 542. By permitting other religious adherents to obtain the identical accommodation Batman sought, Defendants have "undermine[d] [their] contention that its non-discrimination policies can brook no departures." *Id*. Simply put: Defendants have "no compelling reason why [they] have particular interest in denying an exception to [Batman] while making them available to others." *Id. That ends the inquiry and demonstrates Defendants have no compelling interest in denying Batman's requested accommodation as a matter of law*.

This is particular true when it permits the same activity and the same accommodation to adherents of other religions. (V. Compl., ¶¶95, 96, 97, 111.) Comparability, "for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies" Defendants' denial of Batman's requested accommodation, *Tandon*, 593 U.S. at 62, "not the reasons why" Batman requested it. *Id*. Remote

accommodations are available, Defendants have granted them to others, and they have no justification for denying Batman's.

### c. Defendants' denial of Batman's requested religious accommodation is not the least restrictive means.

Even if Defendants could articulate a compelling interest for denying Batman's requested accommodation, which they cannot, Defendants' actions would still fail strict scrutiny because they are not narrowly tailored to achieve any compelling government interest. "It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those sends. *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). A narrowly tailored regulation of protected First Amendment activity is one that achieves the government's interest "without unnecessarily interfering with First Amendment freedoms." *Sable Commc'ns*, 492 U.S. at 126.

Defendants are required to show that there were no less restrictive alternatives to prohibiting Batman from receiving the identical accommodation it has provided to adherents of other religious faiths. They cannot. To meet this burden, the government must show it "seriously undertook to address the problem with less intrusive tools readily available to it," meaning that it "considered different methods that other jurisdictions have found effective." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014) (emphasis added). And the government must "show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out

Proposed Order Granting Motion – Preliminary Injunction –
*Batman v. County of Los Angeles, et al.* –
20

for good reason," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interest, not simply that the chosen route was easier.'" *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *McCullen*, 573 U.S. at 494). Defendants did none of this. They automatically denied Batman's requested accommodation immediately (twice) despite demonstrating beyond cavil that Batman's requested accommodation was readily available and granted to other religious employees. Defendants therefore cannot satisfy their burden that denial of Batman's requested accommodation is the least restrictive means.

## B. Defendants' denial of Batman's request for religious accommodation violates the Equal Protection Clause.

Defendants' denial of Batman's request for a religious accommodation while favoring and granting other similarly situated requests for accommodation violates the Equal Protection Clause for two independent reasons. First, treating similarly situated individuals in a dissimilar manner plainly violates equal protection. Second, because Batman has demonstrated that the government's actions violate the Free Exercise Clause by failing the neutrality and general applicability requirements, binding precedent dictates it necessarily violates the Equal Protection Clause for the same reason.

**1. Defendants' denial of Batman's requested religious accommodation violates the Equal Protection Clause because it treats similarly situated religious accommodation requests dissimilarly.**

The Equal Protection Clause of the Fourteenth Amendment makes it unconstitutional for any state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. "[T]he concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the government action questioned or challenged." *Reynolds v. Sims*, 377 U.S. 533, 565 (1964). The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Simply put, the Equal Protection Clause prohibits "state action of every kind that operates to deny any citizen the equal protection of the laws." *Gilmore v. City of Montgomery*, 417 U.S. 556, 565 (1974).

Here, Defendants have granted month-long remote accommodation requests for individuals needing that accommodation for their sincerely held religious beliefs. (V. Compl., ¶¶95, 96, 97, 111.) Batman requested the same accommodation, and Defendants denied it because of the particular month in which it took place. There is no basis for treating Batman's identical request differently than the requested accommodation of identically situated employees. For that reason *alone*, Defendants' actions violate the Equal Protection Clause.

Digging further, Defendants' actions actually harken back to a bygone era of discrimination that was long-ago relegated to the dustbin of constitutional history, yet trotted out once again to suggest Batman's religious beliefs were somehow unequal. Batman requested remote working as an accommodation that was available and non-burdensome. (V. Compl., ¶¶95, 96, 97, 98, 111.) Defendants suggested that their interest in inclusivity (whatever that means) prohibited them from granting that accommodation. (V. Compl., ¶90.) Yet Defendants saw fit to offer Batman a different "accommodation" that treats him a "separate but equal." Rather than granting Batman's request for a religious accommodation of remote work identical to that afforded other employees, Defendants offered Batman the "accommodation" of using a separate entrance that relegated his beliefs to a bygone era of racial discrimination. (V. Compl., ¶109.) The Fourteenth Amendment demands that Defendants eliminate "every custom, practice, policy, or usage reflecting an impermissible obeisance to the now thoroughly discredited doctrine of separate but equal." *Gilmore*, 417 U.S. at 567.

The Fourteenth Amendment prohibits the government from making facilities available on unequal terms based on fundamental rights. It prohibits separating parks, recreational facilities, and state buildings on account of race, *Watson v. City of Memphis*, 373 U.S. 526 (1963); it prohibits separating recreational programs on account of race, *Gilmore*, 417 U.S. at 567; it prohibits separating admission applicants into different pools based on protected characteristics, *Students for Fair Admission, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181 (2023), and it prohibits discrimination *in any form*

that differentiates between similarly situated people on account of constitutionally protected rights, including religion.

As Justice Brennan opined, separate but equal was "a status always separate but seldom equal." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 326 (1978) (Brennan, J., concurring). Yet, this is precisely what Defendants have done to Batman, saying that he may maintain his religious beliefs and simply use the back door. The Fourteenth Amendment knows no such segregation. But, "separate but equal has no place. Separate [employment] facilities are inherently unequal." *Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 495 (1954). Batman, "by reason of the segregation complained of [is] deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment." *Id.* Defendants' treatment of Batman's sincerely held religious beliefs and its separate and unequal treatment of his quest for a religious accommodation violates the Fourteenth Amendment.

**2. Defendants' denial of Batman's requested religious accommodation violates the Equal Protection Clause for the same reason it violates the Free Exercise Clause.**

Because Defendants' actions violate the Free Exercise Clause, *see supra* Section I.A, the Court must conclude that they also violate the Equal Protection clause because they "jeopardized the exercise of a fundamental right." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *accord Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021) (equal protection claim triggered strict scrutiny because it alleged "a

Proposed Order Granting Motion – Preliminary Injunction –
*Batman v. County of Los Angeles, et al.* –
24

deprivation of free exercise, a fundamental right," and a classification based on religion

## C. Defendants' denial of Batman's request for religious accommodation violates the Establishment Clause.

The Establishment Clause prohibits the government from expressing hostility towards religion. Indeed, the Supreme Court and the Ninth Circuit have held that the Establishment Clause is "violated as much by government disapproval of religion as it is by government approval of religion." *Vernon v. City of L.A.*, 27 F.3d 1385, 1396 (9th Cir. 1994); *see also, e.g.*, *Epperson v. State of Arkansas*, 393 U.S. 97, 104 (1968) ("[Government] may not be hostile to any religion[.]"); *Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1053 (9th Cir. 2025) ("Government action that expresses hostility towards a plaintiff's religion, coupled with a sufficient connection between the plaintiff and that action, inflicts an [Establishment Clause] injury.").

Here, Defendants have demonstrated hostility towards Batman's religious beliefs and requests for accommodation while expressing a preference for and granting the religious accommodation requests of other religious adherents. (V. Compl., ¶¶90, 95, 96, 97, 98, 111.) That is plainly an Establishment Clause violation. Preferring certain religious sects over others is plainly violative of the Establishment Clause. "[I]t is surely true that that Establishment Clause prohibit government from . . . favor[ing] the adherents of any sect or religious organization." *Gillette v. United States*, 401 U.S. 437, 449 (1971); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 855 (1995) ("the Establishment Clause forbids not only government preferences for

some religious sects over others, but also government preference for religion over irreligion" (Thomas, J., concurring)).

### D. Defendants' denial of Batman's request for religious accommodation violates Title VII of the Civil Rights Act.

"Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular accommodation or accommodations." *Groff v. DeJoy*, 600 U.S. 447, 472 (2023). Defendants failed this test.

Batman plainly demonstrated that he had sincerely held religious objections to certain employment requirements. (V. Compl., ¶¶40–56.) Batman requested a modest accommodation of those religious beliefs which would allow him to work remotely (which he already does one day per week) and which would only require 12 additional days of remote work per year. (V. Compl., ¶88.) Defendants have made plain that this identical accommodation is available, reasonable, and non-burdensome. (V. Compl., ¶¶95, 96, 97, 111.) In fact, Defendants have made this exact accommodation available to other religious adherents for the month that conflicts with their sincerely held religious beliefs. (V. Compl., ¶¶95, 96, 97, 111.) As such, there is no burden to granting Batman's requested accommodation, and to discriminate against and deny his request violates Title VII.

### II. Batman has suffered, is suffering, and will continue to suffer irreparable constitutional injury absent a preliminary injunction.

"A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001

(9th Cir. 2005) (cleaned up)). This is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *A.P. v. Otter,* 682 F.3d 821, 826 (9th Cir. 2012) (same). Moreover, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012) (quoting *Kikumara v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)). The reason for that is simple: "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up). Batman has plainly suffered irreparable injury by being unceremoniously and unconstitutionally denied a religious accommodation for his protected religious belief (V. Compl., ¶¶90, 98), by being singled out for disfavored treatment on the basis of his sincerely held religious beliefs (V. Compl., ¶90), and by being subjected to a "separate but equal" instruction for his sincerely held religious beliefs. (V. Compl., ¶¶109–110.) The First and Fourteenth Amendments to the United States Constitution demand that Batman's religious beliefs and requests for accommodation be treated identically to those of all similarly situated requests, and—even absent a similarly situated comparator—would still demand that Defendants provide Batman with a religious accommodation when doing so would impose no harm on Defendants whatsoever. The Constitution demands more, and Defendants provided less. Batman has suffered cognizable and constitutional irreparable harm.

**III. Batman satisfies the other requirements for preliminary injunction.**

"When, like here, the nonmovant is the government, the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The reason for that is simple: "We have consistently recognized the 'significant public interest' in upholding free speech principles." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting *Sammartano v. First Jud. Dist. Ct., in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002)). *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("[T]he public interest favors the exercise of First Amendment rights"). Simply put: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1040 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). Because Plaintiff has shown his likelihood of success on the merits and irreparable harm from Defendants' First Amendment violations, "the balance of the equities and the public interest thus tip sharply in favor of enjoining" Defendants' policies. *Klein*, 584 F.3d at 1208.

## CONCLUSION

Because Defendants' actions and denial of Batman's religious accommodation request violates the Free Exercise Clause, the Establishment Clause, the Equal Protection Clause of the Fourteenth Amendment, and Title VII of the Civil Rights Act, and because Batman has suffered and will continue to suffer irreparable injury—including this coming June—absent injunctive relief, the Motion is GRANTED.

Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, are hereby RESTRAINED and ENJOINED from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with Defendants' policies and actions prohibiting religious accommodations for the month of June and requiring that Defendants grant Plaintiff's religious accommodation request for the month of June in the same manner that it has with other similarly situated employees, permitting him to work remotely as is available to other religious employees and otherwise refraining from discriminating against Plaintiff with respect to the terms and conditions of his employment and the preliminary injunction issued.

SO ORDERED

_____

United States District Judge